**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

JASON FRANCO AND ABIGAIL FRANCO, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED CLASS AND SUBCLASS MEMBERS,

*Plaintiffs-Appellants*,

v.

CHOBANI, LLC,

*Defendant-Appellee*.

_____

On Appeal from the United States District Court
For the Northern District of Illinois, Eastern Division
No. 1:23-cv-03047.
The Honorable Judge John J. Tharp, Jr., Presiding.

**REPLY BRIEF FOR
PLAINTIFFS-APPELLANTS JASON FRANCO AND ABIGAIL FRANCO,
INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY
SITUATED CLASS AND SUBCLASS MEMBERS**

Yates M French (IL 6296526)
  Counsel of Record
RATHJE WOODWARD LLC
300 E. Roosevelt Road, Suite 220
Wheaton, Illinois 60187
Phone: (630)-668-8500
yfrench@rathjelaw.com

Alexander H. Burke (IL 6281095)
BURKE LAW OFFICES LLC
909 Davis Street, Suite 500
Evanston, Illinois 60201
Ph: 312-729-5288
ABurke@BurkeLawLLC.com
*Counsel for Plaintiffs-Appellants*

Dated: December 17, 2025

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................2

I.   Chobani Is Wrong That Allulose Is Not A "Sugar"
     As Defined In 21 CFR §§ 101.60(C)(1) And 101.9(C)(6) ...........2

     A.   FDA regulations unambiguously define
          allulose as sugar...................................................................2

          i.    Chobani ignores multiple FDA statements
                that allulose is a sugar..............................................3

          ii.   When the FDA told Chobani that Allulose
                is a sugar; Chobani agreed ......................................6

          iii.  The plain language, confirmed by interpretative
                canons, support the FDA's conclusion that
                allulose
                is a sugar ..................................................................8

          iv.   Chobani's other interpretive tools are equally
                inapplicable reasons to depart from the plain
                language of 21 C.F.R. § 101.9(c)(6)(ii)....................11

II.  Chobani's Arguments Would Fail Even if 21 C.F.R.
     § 101.9(c)(6)(ii)
     was Ambiguous...........................................................................13

     A.   The FDA interprets the regulatory definition of
          sugar to include allulose ...................................................14

     B.   The Allulose Guidance does not change this
          analysis…………...............................................................16

C.    Because the FDA considers allulose a sugar under its regulation, Chobani's *Auer* deference argument fails ...................................................................... 19

D.    Chobani's other *Auer* deference arguments must be rejected ................................................. 21

E.    The Allulose Guidance is not entitled to deference (or weight) under *Skidmore* ............................. 26

III. The Allulose Guidance Is Not Preemptive ........................... 27

IV. Plaintiffs' Consumer Deception Claims Are Cognizable .... 30

CONCLUSION ...................................................................... 33

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c) ........................... 35

PROOF OF SERVICE ......................................................... 36

# TABLE OF POINTS AND AUTHORITIES

## CASES

*Assure Competitive Transp., Inc. v. United States,*
635 F.2d 1301 (7th Cir. 1980) ........................................................... 17, 18

*Auer v. Robbins,* 519 U.S. 452 (1997)............................................. *Passim*

*Beardsall v. CVS Pharmacy, Inc.,*
*953 F.3d 969 (7th Cir. 2020)* .................................................................. 30

*Bell v. Publix Super Markets, Inc.,*
982 F.3d 468 (7th Cir. 2020) ...................................................... 29, 31, 32

*Biffar v. Pinnacle Foods Grp., LLC,*
2016 WL 7429130 ....................................................................................... 32

*Bonumose, Inc. v. United States Food and Drug Administration,*
No. 1:23-cv-00645-RDM (D.C. Cir. 2024)....................................... *Passim*

*Bostock v. Clayton Cnty., Georgia,*
590 U.S. 644 (2020) .................................................................................. 12

*Burgess v. United States,*
553 U.S. 124 (2008) .................................................................................. 12

*Calderon v. Procter & Gamble Co.,*
 674 F. Supp. 3d 483 (N.D. Ill. 2023) ..................................................... 32

*Cheney R.R. Co., Inc. v. I.C.C.,*
902 F.2d 66 (D.C.Cir.1990) .................................................................... 10

*Christensen v. Harris Cnty.,*
529 U.S. 576 (2000) ............................................................................ 13, 14

*Christopher v. SmithKline Beecham Corp.,*
567 U.S. 142 (2012). ................................................................................. 26

*Chrysler Corp. v. Brown,*
441 U.S. 281 (1979) ........................................................ 16, 17

*Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.,*
717 F.3d 545 (7th Cir. 2013) ................................................ 11

*Digital Realty Tr., Inc. v. Somers,*
583 U.S. 149 (2018) ........................................................ 12

*Epic Sys. Corp. v. Lewis,*
584 U.S. 497 (2018) ........................................................ 12

*Exelon Generation Co., LLC v. Loc. 15, Int'l Broth. of Elec. Workers,*
*AFL-CIO*, 676 F.3d 566 (7th Cir. 2012) .................................... 13

*Flight Training Int'l, Inc. v. Fed. Aviation Admin.,*
58 F.4th 234 (5th Cir. 2023) ................................................ 16

*Gubala v. CVS Pharmacy, Inc.,*
2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ................................ 33

*Gustafson v. Alloyd Co., Inc.,*
513 U.S. 561 (1995) ........................................................ 13

*Hall St. Associates, L.L.C. v. Mattel, Inc.,*
552 U.S. 576 (2008) ........................................................ 10

*Hawkins v. Kroger Co.,*
906 F.3d 763 (9th Cir. 2018) ................................................ 28

*Heckler v. Chaney,*
470 U.S. 821 (1985) ........................................................ 18

*Hoctor v. U.S. Dept. of Agric.,*
82 F.3d 165 (7th Cir. 1996) ........................................ 16, 17, 18

*Indep. Tr. Corp. v. Stewart Info. Services Corp.*,
665 F.3d 930 (7th Cir. 2012) .................................................. 33

*Kisor v. Wilkie*,
588 U.S. 558 (2019) ..................................................... *Passim*

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ............................................................. 17

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ............................................................ 26

*Martin v. Occupational Safety & Health Rev. Comm'n*,
499 U.S. 144 (1991) ............................................................ 19

*Martin v. Am. Cyanamid Co.*,
5 F.3d 140 (6th Cir. 1993) .................................................... 15

*Natl' Ass'n of Home Builders v. Defenders of Wildlife*,
551 U.S. 644 (2007) .............................................................. 9

*Nat'l Mining Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014)..................................... 16, 17, 18

*Nix v. Hedden*,
149 U.S. 304 (1893) ............................................................ 12

*Perez v. Kroger Co.*,
336 F. Supp. 3d 1137 (C.D. Cal. 2018)........................... 22, 23

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011) ............................................................ 21

*Porter v. NBTY, Inc.*,
2019 WL 5694312 (N.D. Ill. Nov. 4, 2019) ......................... 29

*Reid v. Johnson & Johnson*,
780 F.3d 952 (2015) ...................................................... 28, 32

*Robertson v. Salomon*,
130 U.S. 412 (1889) .................................................................. 12

*Scherr v. Marriott Int'l, Inc.*,
703 F.3d 1069 (7th Cir. 2013) ............................................... 11

*Schneider v. Mott's LLP*,
2022 WL 4314207 ..................................................................... 32

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ............................................................ 26, 27

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) .................................................. 31

*U.S. v. Powell*,
423 U.S. 87 (1975) .................................................................... 10

*Weaver v. Champion Petfoods USA Inc.*,
3 F.4th 927 (7th Cir. 2021) ..................................................... 32

*Wertymer v. Walmart, Inc.*,
142 F.4th 491 (7th Cir. 2025) ................................................. 32

*Whetsel v. Network Prop. Services, LLC*,
246 F.3d 897 (7th Cir. 2001) .............................................. 9, 10

*Wilson v. Odwalla, Inc.*, No. 17-2763 DSF (FFMX),
2018 WL 3830119 (C.D. Cal. July 30, 2018) .................... 22, 23

*Wyoming Outdoor Council v. U.S. Forest Serv.*,
165 F.3d 43 (D.C. Cir. 1999) .................................................. 14

*Yates v. United States*,
574 U.S. 528 (2015) .................................................................. 13

**CODE OF FEDERAL REGULATIONS**

50 C.F.R. § 402.03 ................................................................ 9

21 C.F.R. § 101.9(c)(6) ...................................................... 15

21 C.F.R. § 101.13(c) .......................................................... 28

21 C.F.R. § 101.60(c)(1)(i) .......................................... 6, 7, 8

21 C.F.R. § 101.9(c)(6)(ii) ..................................... *Passim*

**FEDERAL REGISTER**

58 Fed. Reg. 2079 ............................................................. 12

81 Fed. Reg. 33742 . ........................................................... 3

85 Fed. Reg. 66217 . ........................................................... 5

85 Fed. Reg. 66335 ............................................................. 5

85 Fed. Reg. at 66337-66338 ........................................ 11

**OTHER AUTHORITIES**

¶ 160 How FDA Rulemaking Affects Law Enforcement, FDAENF ¶ 160, 2002 WL 33967075 ................................................. 14

Antonin Scalia & Bryan A. Garner,
Reading Law: The Interpretation of Legal Texts (2012) ....................... 10

## INTRODUCTION

Hoping to be the first to market with a "zero-sugar" yogurt (and just before its initial public offering), Chobani chose to use allulose as a sweetener in its yogurt. Chobani's packaging prominently assured consumers their yogurt contains "Zero Sugar," and is a "one of a kind product" while publicly stating it was the "first nationally distributed product in the U.S. yogurt aisle [labeled] no sugar." A4 ¶¶ 5-9; A38 ¶ 26. This claim misleads consumers across the country as allulose is, in fact, a sugar.

Nonetheless, the District Court found, for the first time, the FDA's definition of "sugar" was ambiguous. From there it used the FDA's expressly non-binding guidance to preempt state consumer protection laws. The result is a novel finding that allulose, a monosaccharide, is not a sugar under the FDA's definition of "total sugars" that includes "all monosaccharides." The District Court, and Chobani, are wrong. Simply put, the FDA has not changed or updated its regulations to reflect changes in food science. Despite its protests, Chobani must comply with the current definition of "Total Sugars" which includes allulose.

**ARGUMENT**

## I. Chobani Is Wrong That Allulose Is Not A "Sugar" As Defined In 21 CFR §§ 101.60(C)(1) And 101.9(C)(6).

Plaintiffs and the FDA agree, allulose, a monosaccharide, falls within the regulatory definition of "total sugars" set forth in 21 C.F.R. § 101.9(c)(6)(ii) ("Total sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). The only parties that have ever disagreed are Chobani and the District Court.

But Chobani and the District Court do not agree on exactly *how* they disagree. Chobani argues that this regulatory definition unambiguously excludes allulose from the definition of sugar. The District Court, in contrast, held that this regulatory definition is ambiguous, and then purported to apply *Auer* deference to the non-binding Allulose Guidance resulting in a novel definition of sugar that excludes allulose. They are both wrong.

### A. FDA regulations unambiguously define allulose as sugar.

Chobani is correct that 21 C.F.R. § 101.9(c)(6)(ii)'s definition of sugar is not ambiguous, but Chobani is wrong that this definition does not reach all monosaccharides including allulose.

The regulatory definition of "sugars" and "total sugars" has been constant for many years. In 2016 the FDA issued a final rule that replaced the term "Sugars" with "Total Sugars." *See* 81 FR 33742 and 21 CFR 101.9(c)(6)(ii); *see also* A16 Allulose Guidance at fn 3. But the definition itself remained unchanged and has always included "the sum of all free mono-and-disaccharides" including allulose.[1]

Chobani's arguments to the contrary focus on technical interpretative canons. Those arguments are wrong, as shown below. However, it is important to focus initially on the arguments and evidence that Chobani chose to ignore.

### i. Chobani ignores multiple FDA statements that allulose is a sugar

Appellants' opening brief devoted several pages to the FDA's statements made in the *Bonumose* litigation regarding the sweetener tagatose. App. Br. at 9-11, 14-16. Plaintiffs' argument culminated by

---

[1] *See* Allulose Guidance A 16 ("Allulose is a monosaccharide that is an epimer of D-fructose."). That is, fructose and allulose have the same molecular formula ($C_6H_{12}O_6$), https://www.acs.org/molecule-of-the-week/archive/f/fructose.html August 28, 2017 (fructose), https://www.nutriavenue.com/ingredients/allulose-suagr-sweetener-bulk/ (allulose), but have a different three dimensional structural at one chiral center. A42 ¶¶37-38.

quoting the FDA's unequivocal statement it had determined that allulose qualified as a sugar under the current regulation. *Id.*

Chobani's response essentially ignores these FDA statements, and their effect, and focuses on the ultimately inconsequential holding made by the *Bonumose court*. Resp. at 35-36. This is erroneous for two reasons. **First**, the issue before this Court turns on the express preemption doctrine, not issue preclusion. The FDA's statements that it has determined that allulose is a sugar are thus directly on point.

**Second**, Judge Moss's ruling in the *Bonumose* litigation never touched the issue of whether allulose (or tagatose) meet the regulatory definition of sugar. Rather, his ruling held that whatever special exemptions from regulatory enforcement which the FDA granted to allulose must also be granted to tagatose. *See Bonumose, Inc. v. United States Food & Drug Admin.*, 747 F. Supp. 3d 211, 222 (D.D.C. 2024)[2] This

---

[2] Explaining that "Both the Tate & Lyle (allulose) and the Bonumose (tagatose) citizen petitions asked the FDA to amend the governing regulations, *see* Dkt. 37-3 at 94 (allulose petition); Dkt. 37-2 at 77 (tagatose petition), and, in both cases, the FDA declined to do so and, instead, exercised its enforcement discretion. With respect to the Tate & Lyle petition, the agency exercised that discretion to exclude allulose from the Total Sugars and Added Sugars declarations, Dkt. 37-5 at 86–87, and, with respect to the Bonumose petition, the agency declined to exempt tagatose but did exercise its enforcement discretion to permit the use of the 1.5 kcal/g caloric contribution in lieu of the standard 4.0 kcal/g contribution, Dkt. 37-2 at 186." *Id.*, at fn 2.

omission is critical. It shows that in the years after issuing the Allulose Guidance the FDA has consistently continued to treat allulose as a sugar.[3]

The Allulose Guidance itself confirms that allulose is, by the FDA's own definition, a sugar. If allulose was not a "sugar," the Allulose Guidance would have simply said that. But it didn't. If allulose was not a sugar, there would be no need to "intend to exercise enforcement discretion … pending future rulemaking regarding amending the definition of 'Total Sugars'" as allulose would have already been excluded. A18. But that is not what the FDA did. If that isn't enough, the FDA expressly confirmed this is what it had done just three years later in the Tagatose litigation when it stated it had "determined that both allulose and tagatose qualified as sugars under [21 C.F.R. § 101.9(c)(6)(ii)] and it has similarly not amended its regulations to exempt allulose from the "Added Sugars" declaration." *Bonumose*, D.C. Cir. Case No. 1:23-cv-00645-RDM at Dkt. 24 p.18.

---

[3] On October 19, 2020, the same day the Allulose Guidance was announced, 85 FR 66217, the FDA made a request for information and comment regarding "Sugars that are Metabolized Differently Than Traditional Sugars". 85 FR 66335. The FDA has yet to take any action on this request for information and comment.

### ii. When the FDA told Chobani that allulose is a sugar; Chobani agreed.

Chobani also omits that it changed the product's label after the FDA told them to do so (and after Plaintiffs had sued). When Plaintiffs filed their Complaint in May 2023, they alleged that preemption failed because Chobani's label violated both 21 C.F.R. § 101.60(c)(1)(i) and (ii). A46-52 ¶¶58-85. Subsection (ii) requires that any product labeled "zero sugar" must include an asterisk identifying any ingredient "that is a sugar or that is generally understood by consumers to contain sugars."[4] Chobani changed its label to add this asterisk identifying allulose as a sugar sometime after commencement of this lawsuit.

The District Court sidestepped this admission, by concluding (without support) that Chobani "could have added the asterisk for a number of different reasons." Op. at 39. But this is inaccurate. The record is clear as to why Chobani added an asterisk identifying allulose as a sugar – Chobani did it because the FDA told them to.

As part of Chobani's 2023 request for a temporary marketing permit, Chobani provided the FDA with a draft label that included the

---

[4] As alleged in the complaint, consumers are not familiar with allulose, and it is not generally understood by consumers to contain sugars. A52 ¶81.

"zero sugar" nutrient content claims. The label did not specify the amount of allulose contained in each serving, and the FDA never approved or evaluated the label's compliance with 21 C.F.R. § 101.60(c)(1)(**i**). However, the draft label did contain enough information for the FDA to determine that it violated 21 C.F.R. § 101.60(c)(1)(**ii**). Writing on behalf of the FDA, Consumer Safety Officer Marjan Morravej explained:

**From:** Morravej, Marjan <Marjan.Morravej@fda.hhs.gov>
**Date:** Wednesday, January 11, 2023 at 2:41 PM
**To:** Matthew Graziose <Matthew.Graziose@chobani.com>
**Cc:** Reese, Daniel <Daniel.Reese@fda.hhs.gov>
**Subject:** [External] Yogurt TMP Application

Dear Matt,

Upon the label review we have noticed the followings that need your attention. We will proceed with your application, once we receive the revised labels.

\*\*\*

- We note that the labels bear a "no sugar" nutrient content claim. In accordance with 21 CFR 101.60(c)(1)(ii), this claim can be used if the food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar." The labels currently have a symbol for the skim milk ingredient linking to the statement "Includes a dietarily insignificant amount of sugar." However, the allulose ingredient is not linked to the same statement and needs to be linked.

Dkt. 29-2. p. 4. The effect is twofold.

***First***, Plaintiffs' claims cannot be preempted for any period prior to Chobani curing this violation (*i.e.*, from the release date to the 2023 change) because up until then, the nutrient content claim at issue in this

case was prohibited due to Chobani's failure to comply with 21 C.F.R. § 101.60(c)(1)(ii).

**_Second_**, Chobani's label continues to violate FDA regulations to this day, preventing preemption of all claims arising after this revision was made. Because if allulose "is a sugar" for purposes of 21 C.F.R. § 101.60(c)(1)(**ii**), it is also a "sugar" for purposes of 21 C.F.R. § 101.60(c)(1)(**i**). The addition of a sugar asterisk to the label does nothing to change the fact that the product contains at least four grams of sugar per serving; eight times more than the FDA's 0.5 gram threshold for "zero sugar" nutrient content claims. 21 C.F.R. § 101.60(c)(1)(i). Thus, the new version of the label continues to violate the first prong of the FDA's "zero sugar" regulations. Chobani ignores all of this in their briefing, because it has no response.

### iii. The plain language, confirmed by interpretative canons, support the FDA's conclusion that allulose is a sugar.

The most basic reason to reverse the District Court's decision is because it purported to defer to an interpretation of 21 C.F.R. § 101.9(c)(6)(ii) which the FDA never adopted. A more complicated reason

to reverse the District Court's ruling turns on technical rules and interpretive canons.

Chobani argues that it is applying the well-established canon that judicial interpretation should give effect to all words, and avoid treating any as mere surplusages. But that is not exactly right. What Chobani is really doing is applying the doctrine of *expressio unius* to conclude that an FDA regulation defining total sugars as including "all free mono-and disaccharides" is actually limited to some monosaccharides, which are sufficiently similar to exemplars listed in a parenthetical (*i.e.* "such as glucose, fructose, lactose, and sucrose"). Chobani also muddies the waters by citing cases (such as *Bria*) applying the separate *ejusdem generis* canon.[5]

Chobani's *ejusdem generis* argument fails because it inverts the order of 21 C.F.R. § 101.9(c)(6)(ii)'s regulatory language. *Ejusdem generis* applies "when a statute sets out a series of specific items ***ending with*** a

---

[5] *Potter*, cited by Chobani, relates to a different canon, *expressio unios*. This canon is also widely accepted to have minimal, if any, bearing on interpretation of agency regulations. *See Whetsel* 246 F.3d at 902. And *Natl' Ass'n of Home Builders*, in which the Supreme Court held that 50 C.F.R. § 402.03's reference to "All actions in which there is discretionary Federal involvement or control" was limited to "discretionary" Federal involvement or control did not come close to holding that "all" monosaccharides actually means "some" monosaccharides.

general term." *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) (emphasis added). But 21 C.F.R. § 101.9(c)(6)(ii) follows the opposite structure, it starts with the general ("All free mono- and disaccharides") and then ends with the specific ("(such as glucose, fructose, lactose, and sucrose)"). "Authorities have traditionally agreed that the specific-general sequence is required [for *ejusdem generis*], and that the rule does not apply to a general-specific sequence." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 203 (2012). Thus, in a general-specific structure, *ejusdem generis* is inapplicable. In any case, *ejusdem generis* also cannot be used to defeat the plain language of 21 C.F.R. § 101.9(c)(6)(ii). *U.S. v. Powell*, 423 U.S. 87, 91 (1975) ("[*Ejusdem generis*] limits general terms which follow specific ones to matters similar to those specified; but it may not be used to defeat the obvious purpose of legislation.")

Chobani's *expressio genris* argument also fails because this canon "has reduced force in the context of interpreting agency administered regulations." *Whetsel v. Network Prop. Services, LLC*, 246 F.3d 897, 902 (7th Cir. 2001); *see also Cheney R.R. Co., Inc. v. I.C.C.*, 902 F.2d 66, 69

(D.C.Cir.1990) (calling *expressio unius* "an especially feeble helper in an administrative setting").

### iv. Chobani's other interpretive tools are equally inapplicable reasons to depart from the plain language of 21 C.F.R. § 101.9(c)(6)(ii)

Chobani's insistence on valuing the "entire statutory scheme," over 21 C.F.R. § 101.9(c)(6)(ii)'s plain language is also improper. Only when the court "do[es] not have statutory definitions available" will it rely upon the "context of the entire statutory scheme." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) *see also Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.,* 717 F.3d 545, 550 (7th Cir. 2013). Thus, Chobani's reliance on the "context" surrounding 21 C.F.R. § 101.9(c)(6)(ii) is misplaced. In reality, what Chobani characterizes as the "context" in which to interpret 21 C.F.R. § 101.9(c)(6)(ii), is merely Chobani advocating for allulose to receive a special exclusion, an option the FDA is aware of but has not done. *See* A171 (*Bonumose* litigation); A23-24 (85 Fed. Reg. at 66,337-66,338).

This cannot overcome the reality of the plain language of 21 C.F.R. § 101.9(c)(6)(ii) stating that "all monosaccharides" are a sugar. The "context" of "calories, blood sugar levels, and cavities" do nothing to

change that definition nor permit the Court to depart from this definition. *See Digital Realty Tr., Inc. v. Somers,* 583 U.S. 149, 160 (2018) ("When a statute includes an explicit definition, we must follow that definition")*; Bostock v. Clayton Cnty., Georgia,* 590 U.S. 644, 683 (2020) ("Ours is a society of written laws. Judges are not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations."); *see also* 58 FR 2079 at 2098, cmt. 52, rejecting a physiological definition of "sugars".

Nor is this plain reading an overly literal, unfair reading that results in the "broadest imaginable" definition as Chobani claims. "Statutory definitions control the meaning of statutory words,"[6] and here we have a statutory definition of "sugar" that includes "all monosaccharides," of which allulose is. Indeed, ***none*** of the cases cited by Chobani (two of which predate the existence of the FDA by decades) interpreted whether an item fit within a statutory definition. *See Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 511 (2018) (interpreting an operative statute); *Nix v. Hedden*, 149 U.S. 304, 306 (1893) ("tomato" was not defined in the Tariff Act of 1883); *Robertson v. Salomon*, 130 U.S. 412,

---

[6] *Burgess v. United States*, 553 U.S. 124, 129 (2008).

414 (1889) ("garden seeds" was not defined in the customs-duties act); *Yates v. United States*, 574 U.S. 528, 537 (2015) ("tangible object" was not defined in the Sarbanes-Oxley Act); *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 568 (1995) ("Prospectus" was not defined in the Securities Act). Nor does Chobani offer any compelling reason, other than that it would benefit Chobani, to ignore the plain and simple reading of 21 C.F.R. § 101.9(c)(6)(ii). Simply, the plain language controls, allulose, a monosaccharide, with the same molecular formula as fructose, is a sugar under the FDA's definition. *Exelon Generation Co., LLC v. Loc. 15, Int'l Broth. of Elec. Workers, AFL-CIO*, 676 F.3d 566, 570 (7th Cir. 2012) ("If the meaning of the regulatory text is clear, the task is complete.").

## II. Chobani's Arguments Would Fail Even if 21 C.F.R. § 101.9(c)(6)(ii) was Ambiguous.

Hoping to escape the plain language of 21 C.F.R. § 101.9(c)(6)(ii), Chobani asks this Court grant *Auer* deference to the Allulose Guidance. Doing so would be reversible error. *See Christensen v. Harris Cnty.,* 529 U.S. 576, 588 (2000) ("*Auer* deference is warranted only when the language of the regulation is ambiguous"). However, even if 21 C.F.R. § 101.9(c)(6)(ii) was ambiguous, which it is not, the Allulose Guidance is not entitled to deference.

## A. The FDA interprets the regulatory definition of sugar to include allulose.

Chobani is asking to Court to defer to an interpretation of an FDA regulation that the FDA itself has never made. In so doing, Chobani would "[permit the FDA] under the guise of interpreting a regulation, to create de facto a new regulation." *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000).

The FDA clearly announced that allulose is a sugar in the preamble to its 2016 Final Rule. A152-153; *FDA Enforcement Manual* ¶160 (Dennis Tosh, managing ed.), 2002 WL 33967075 (FDA's responses to public comments are part of the "preamble" to a final rule). Specifically, in its response to a comment from an industry member, the FDA stated, "[a]llulose, as a monosaccharide, must be included in the declaration of each [*i.e.*, carbohydrate, sugars, and added sugars] pending any future rulemaking that would otherwise exclude this substance from the declaration." A152-153.

The preamble is unequivocal and authoritative proof that under the FDA's interpretation of its regulation, allulose is a sugar. *See Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) ("[W]e have often recognized that the preamble to a regulation is evidence

of an agency's contemporaneous understanding of its proposed rules."); *Martin v. Am. Cyanamid Co.*, 5 F.3d 140, 145 (6th Cir. 1993) ("The preamble to a regulation may be consulted in determining the administrative construction and meaning of the regulation.").

This interpretation is reflected again in the FDA's September 2023 brief filed in the matter of *Bonumose, Inc., v. United States Food and Drug Administration, et al.*, Case No. 1:23-cv-00645-RDM, U.S. District Court for the District of Columbia. The FDA's *Bonumose* brief concerned the FDA's denial of Bonumose's petition to amend 21 C.F.R. § 101.9(c)(6) to exclude tagatose from the declaration of added sugars.

In its brief, the FDA stated, "FDA determined that both ***allulose and tagatose qualified as sugars under the current regulation*** and noted that the issue of sugars that may be metabolized differently than traditional sugars required further study." A181 (emphasis added). As support for this statement, the FDA cited the Allulose Guidance. *Id.*; A178 (cross-reference for FDA008324); A167 (cross-reference for FDA012132). The FDA could not have been more clear: it interprets 21 C.F.R. § 101.9(c)(6) to include allulose as a sugar, and nothing in the Allulose Guidance changes that interpretation.

## B. The Allulose Guidance does not change this analysis.

Chobani argues that the Allulose Guidance is an "interpretive rule." Resp. at 10 ("[t]he Allulose Guidance is an interpretive rule … that applies to the regulation"); *id.* at 33 (the "non-binding recommendations" caption "does not undermine the authoritativeness of the Allulose Guidance as an interpretive rule"); *id.* at 37 n.7 ("an agency may revise interpretive rules"). This is incorrect.

Under the Administrative Procedures Act, courts recognize different categories of agency action. *Hoctor v. U.S. Dept. of Agric.*, 82 F.3d 165, 169-70 (7th Cir. 1996). These include, among other things, interpretive rules and general statements of policy. *Id.* As explained by the Supreme Court, interpretive rules are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979) (citing Attorney General's Manual on the Administrative Procedure Act at 30 n.3 (1947)). In other words, interpretive rules "explain what an agency thinks a statute or regulation actually says." *Flight Training Int'l, Inc. v. Fed. Aviation Admin.*, 58 F.4th 234, 242 (5th Cir. 2023); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014) ("[A]n

agency action that merely interprets a prior statute or regulation … is an interpretive rule.").

By contrast, general statements of policy are "issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (citing *Chrysler*, 441 U.S. at 302 n.31). Thus, "[a]n agency action that merely explains how the agency will enforce a statute or regulation – in other words, ***how it will exercise its broad enforcement discretion*** or permitting discretion under some extant statute or rule – is a general statement of policy." *Nat'l Mining Ass'n*, 758 F.3d at 252 (Kavanaugh, J.) (emphasis added). Likewise, a "tentative statement of the agency's view" is "just a policy statement." *Hoctor*, 82 F.3d at 169 (Posner, C.J.); *Assure Competitive Transp., Inc. v. United States*, 635 F.2d 1301, 1307 n.6 (7th Cir. 1980) (a policy statement operates prospectively and leaves the agency some freedom in which to exercise discretion).

Here, with respect to the regulatory definition of sugar, the Allulose Guidance is nothing more than a general statement of policy. The pertinent language can be found in subsection III.3., captioned "FDA's

Consideration of Allulose as a Sugar" where the FDA states, "we *intend* to exercise *enforcement discretion* with respect to the exclusion of allulose from the amount of 'Total Sugars' declared on the label *pending future rulemaking* regarding amending the definition of 'Total Sugars.' " A18 (emphasis added). According to the FDA, this intention was based on the FDA's "current thinking" at the time. A16.

By speaking in tentative and prospective terms, the Allulose Guidance is a quintessential statement of policy—explaining how the FDA intends to exercise "its broad enforcement discretion." *Nat'l Mining Ass'n*, 758 F.3d at 252. What the Allulose Guidance does not do is interpret its regulation to exclude allulose. *See id.*; *Hoctor*, 82 F.3d at 169; *Assure Competitive Transp.*, 635 F.2d at 1307 n.6.

To be clear, enforcement discretion is *not* interpretation. Administrative law recognizes that agencies may decline to enforce their regulations for many reasons separate and apart from the question of whether a violation of law has occurred. *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985). Indeed, the Supreme Court has likened an agency's exercise of enforcement discretion to "the decision of a prosecutor in the Executive Branch not to indict." *Id.* at 832.

The same is true here. The FDA could have had any number of reasons for announcing its intent to exercise enforcement discretion. But that announcement cannot be confused with regulatory interpretation. But the FDA's 2016 preamble to the Final Rule and the *Bonumose* briefing – which cites the Allulose Guidance itself – all confirm that the FDA considers allulose a sugar under its definitional regulation.

### C. Because the FDA considers allulose a sugar under its regulation, Chobani's *Auer* deference argument fails.

The *Auer* doctrine is a solution to a particular problem: regulations which have more than one reasonable interpretation. When a regulation is truly ambiguous, a court charged with construing the regulation must decide how to resolve the ambiguity. Under *Auer*, the ambiguity is resolved by giving controlling weight to an agency's reasonable interpretation of its own regulation, so long as other considerations are met. *See generally Kisor v. Wilkie*, 588 U.S. 558 (2019).

The foundation of *Auer* deference is a rebuttable presumption that "the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers." *Kisor*, 588 U.S. at 569–70 (quoting *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 151 (1991)). This presumption has been justified by several

considerations, including agencies' insight into the meaning of regulations they wrote, their expertise in making policy-laden judgments, their political accountability, and a preference for uniformity in decision-making. *Kisor*, 588 U.S. at 570-73.

Chobani's position ignores these foundational principles and makes a two-fold error. First, as explained above, Chobani conflates a statement of intended enforcement discretion with regulatory interpretation. Second, Chobani *elevates* that statement of intended enforcement discretion over the FDA's clear-cut interpretation of its regulation, as evidenced in the comments to the 1993 initial adoption of the rule, the preamble to the 2016 Final Rule and the *Bonumose* brief.

Under these facts, the Allulose Guidance cannot be given *Auer* deference. It is no doubt important that agencies communicate with the public, including regulated industry, about their prospective enforcement discretion and other policy views. But if that communication overrides the agency's clearly-stated interpretation of what its regulation actually says, then the agency's "power authoritatively to interpret its own regulations" is eviscerated, along with the benefits of deference. *See Kisor*, 588 U.S. at 569-73 (agency insight, expertise, political

accountability, and uniformity support deference).

For the same reasons, Chobani is wrong to rely on *PLIVA* (Resp. at 44). In *PLIVA*, the Supreme Court deferred to the FDA's reasonable interpretation of its own regulations: "The FDA, however, tells us that it interprets its regulations to require that the warning labels of a brand-name drug and its generic copy must always be the same." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011) (citing U.S. Brief at 16). The statements to which the Supreme Court deferred were unmistakably the FDA's regulatory interpretations, as they were set forth in the amicus brief of the United States, which represented the views of the FDA in PLIVA's case before the Supreme Court. *Id.* at 613 & n.3. By contrast, for reasons already discussed, the Allulose Guidance does not set forth any regulatory interpretation excluding allulose as a sugar, and any such interpretation contradicts the FDA's later statements in the *Bonumose* litigation.

### D. Chobani's other *Auer* deference arguments must be rejected.

The matters set forth above make swift work of what remains. ***First***, Chobani argues that the Allulose Guidance is the FDA's "authoritative, expertise-based, fair or considered judgment." Resp. at

30-34, 37 n.7. But Chobani puts the cart before the horse. Authority, expertise, and judgment are factors considered by courts in deciding whether an agency's regulatory interpretation is entitled to deference. *Kisor*, 588 U.S. at 577-80. As explained above, as concerns the definition of sugar, the Allulose Guidance is not a regulatory interpretation at all. Thus, Chobani's arguments regarding authority, expertise, and judgment are beside the point.

Likewise, Chobani's sub-argument that an agency may revise its interpretive rules (Resp. at 37 n.7) is inapposite. The Allulose Guidance specifically states that the FDA may revise its definition of "Total Sugars" in future rulemaking. A18.

For similar reasons, Chobani's citations to *Perez* and *Wilson* (Resp. at 32-33) do not aid Chobani. Citing these district court decisions, Chobani claims that other courts have deferred "to similar statements by the FDA in similar contexts." Resp. at 32. But *Perez* and *Wilson* concerned deference to an FDA letter that, in response to a specific request for enforcement, clearly *interpreted* an FDA regulation. *Perez v. Kroger Co.*, 336 F. Supp. 3d 1137, 1144-45 (C.D. Cal. 2018) ("The FDA's interpretation is clear and consistent ...."); *Wilson v. Odwalla, Inc.*, No.

17-2763 DSF (FFMX), 2018 WL 3830119, at *3-5 (C.D. Cal. July 30, 2018) ("The FDA rejected the CSPI's argument, interpreting the section as allowing for the claim….").

The decisions reveal no suggestion that the letter was merely a prospective statement of enforcement discretion. *See generally Perez*, 336 F. Supp. 3d at 1144-46; *Wilson*, 2018 WL 3830119, at *3-5. Nor do they reveal any suggestion that the letter conflicted with other FDA interpretations of the same regulation. *Perez*, 336 F. Supp. 3d at 1144-46; *Wilson*, 2018 WL 3830119, at *3-5. To the contrary, in *Perez*, the district court noted that the decision "appears simply consistent with the FDA's past interpretation of the regulation." *Perez*, 336 F. Supp. 3d at 1146.

**Second**, Chobani reads too much into the FDA's statement, in an online posting, that allulose "may not be included on the [Nutrition Facts] label under Total Sugars or Added Sugars." Resp. at 35 (citing *Sugars That Are Metabolized Differently Than Traditional Sugars*, FDA (Oct. 16, 2020) https://www.fda.gov/food/food-additives-petitions/sugars-are-metabolized-differently-traditional-sugars). It makes perfect sense that the FDA would advise the public of a foreseeable consequence of the

Allulose Guidance – *i.e.*, that manufacturers might exclude allulose from Total Sugars. After all, the regulation requires that allulose be included, so the public might reasonably expect to see it there. And it does indeed appear that the FDA had this in mind: the FDA's online posting states that its content is current as of October 16, 2020, which is contemporaneous with the announcement of the Allulose Guidance in the October 19, 2020 edition of the Federal Register. A23.

**Third**, Chobani discusses, at some length, the *Bonumose* opinion issued by the U.S. District Court for the District of Columbia. Resp. at 35-37. But for *Auer* purposes, all that matters are the views of the FDA. *Auer* is a doctrine of deference to the *agency*, not any court. Thus, the proper focus is the view of the FDA as expressed in its *Bonumose* brief.

Furthermore, Chobani overstates what the district court in *Bonumose* said. Contrary to Chobani's claim, the district court did not "determine" that the Allulose Guidance was "entitled to respect." Resp. at 37. Bonumose challenged the FDA's decision on its tagatose petition as arbitrary and capricious under the APA. *Bonumose, Inc. v. United States Food & Drug Admin.*, 747 F. Supp. 3d 211, 214-15 (D.D.C. 2024). The district court agreed with Bonumose that when deciding the tagatose

petition, "the FDA departed – without explanation – from its reasoning in the allulose decision." *Id.* at 227. No question of deference was presented. *Id.* at 214-15.

In fact, in *Bonumose*, the district court seemed to contemplate the possibility that the Allulose Guidance might "modify" an existing regulation – in which case the Allulose Guidance could not possibly *interpret* it. *Bonumose*, 747 F. Supp. 3d at 231 n.3 ("To the extent that the FDA's decision to move away from the chemical-structure standard for determining what should be classified as a 'sugar' on the nutrition label modifies an existing regulation, the Court will leave it up to the FDA to determine whether, on remand, it is appropriate to codify such changes through notice-and-comment or whether a letter decision meets the agency's obligations under the APA.").

***Finally***, Chobani misses the mark with respect to Plaintiffs' "force of law" argument. Resp. at 37-38. In their opening brief (at 16-20), Plaintiffs offered this argument to make clear that the Allulose Guidance standing alone does not have the power to preempt. Plaintiffs do not offer this argument in opposition to *Auer* deference.

### E. The Allulose Guidance is not entitled to deference (or weight) under *Skidmore*.

Under the *Skidmore* doctrine, courts may give weight to agency interpretations of their own regulations (and also to statutes they administer). *Kisor*, 588 U.S. 558, 573 (2019); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). Referring to *Skidmore*, the Supreme Court has instructed that when *Auer* deference does not apply, "courts should not give deference to an agency's reading, except to the extent it has the 'power to persuade.' " *Kisor*, 588 U.S. at 573 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012)).

As shown above, the Allulose Guidance does not set forth the FDA's interpretation of the regulatory definition of sugar, and the FDA's actual regulatory interpretation includes allulose as a sugar. On these facts, the Allulose Guidance cannot be given any measure of deference (or weight) under *Skidmore*. *Kisor*, 588 U.S. at 573 (referring to *Skidmore* deference given to agency's "reading" of its rules); *see also Loper Bright*, 603 U.S. at 394 (in the context of statutory construction, courts may seek aid from the "interpretations" of those responsible for implementing particular statutes).

Even if the Allulose Guidance were an "interpretation" (it is not),

there is yet another reason that *Skidmore* deference is not possible. Under *Skidmore*, the factors for assessing the weight, if any, to be given an agency interpretation include "its consistency with earlier and later pronouncements." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). In the context of statutory interpretation, the Supreme Court in *Loper Bright* highlighted this issue of consistency: "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Loper Bright*, 603 U.S. at 394.

Plaintiffs emphasize that the Allulose Guidance is not a regulatory interpretation excluding allulose from Total Sugars. But even if it were, it would be diametrically opposed to the FDA's comments in the preamble to the 2016 Final Rule and to the FDA's position in the *Bonumose* litigation. For that reason too, it is not entitled to *Skidmore* deference. *See Loper Bright*, 603 U.S. at 394; *Skidmore*, 323 U.S. at 140.

## III.   The Allulose Guidance Is Not Preemptive

Chobani attempts to expand the Allulose Guidance beyond the nutritional panel to the front of the label. However, the first two

27

sentences of the Allulose Guidance definitively confines this guidance to the nutritional panel:

> This guidance provides our current view on the declaration of allulose **on Nutrition and Supplement Facts labels**, as well as on the caloric content of allulose. This guidance also advises manufacturers of our intent to exercise enforcement discretion for the exclusion of allulose from the amount of "Total Sugars" and "Added Sugars" declared on the label and the use of a general factor of 0.4 calories per gram (kcal/g)2 for allulose when determining "Calories" **on the Nutrition and Supplement Facts labels** pending review of the issues in a rulemaking.

A139 (emphasis added). If the FDA intended to provide guidance for front of the label claims, it would have said so. Nor does expanding the Allulose Guidance to the front of the label make sense. Front and back of the label claims are different in regulation, nature, and purpose and left to the FDA. 21 C.F.R. § 101.13(c); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (2015) ("While a required statement inside a nutrition label escapes regulations reserved for nutrient content claims, the identical statement outside of the nutrition label is still considered a nutrient content claim …."); *Hawkins v. Kroger Co.*, 906 F.3d 763, 770 (9th Cir. 2018) ("The rules that govern claims made within the Nutrition Facts Panel and the rules that govern nutrition content claims elsewhere on

the label are different."); *Porter v. NBTY, Inc.*, 2019 WL 5694312, at *2 (N.D. Ill. Nov. 4, 2019) (same).

Next, relying on *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 485 (7th Cir. 2020), Chobani seeks to give preemptive effect to the Allulose Guidance despite it merely pronouncing enforcement discretion, not creating any requirements for labelling. However, *Bell* held the opposite by refusing to "read the express preemption provision too broadly" as to embrace restricting optional claims. *Id.* at 483-85 ("the FDCA's preemption provision means that, while states may not require sellers to add further labeling that is not required by federal law, they may prevent sellers from voluntarily adding deceptive content that is not required by federal law.") Nothing requires Chobani's claims, thus any "unfairness" the Allulose Guidance sought to avoid is plainly not present.

Finally, despite conceding (because it must) that the Allulose Guidance is not binding law, Chobani forwards a semantic argument that it was not the Allulose Guidance that preempted but, an interpretation of 21 C.F.R. § 101.9(c)(6)(ii) derived from the Allulose Guidance. Resp. at 45 ("Chobani does not argue and the district court did not hold that the Allulose Guidance itself has preemptive effect.") This is not true, on

either point. Chobani relied exclusively on the Allulose Guidance below, not the language of 21 C.F.R. § 101.9(c)(6)(ii), to argue "Plaintiffs' claims should be dismissed as preempted because they seek to impose different requirements than those enforced by FDA." Dkt. 19 at 4-9. The District Court would be surprised to learn it did not find the Allulose Guidance was preemptive as it relied exclusively on the Allulose Guidance as "controlling for preemption purposes," and representing the FDA's "authoritative [and] official position," with "binding legal effect" to overcome its view that Allulose is a "simple sugar" within the definition of 21 C.F.R. § 101.9(c)(6)(ii). Op. at 35-38 (internal citation omitted).

## IV.   Plaintiffs' Consumer Deception Claims Are Cognizable.

Chobani argues that Plaintiffs have failed to allege that the zero sugar label is "likely to deceive reasonable consumers," relying primarily on *Bearsdall*. Resp. at 47. But this case is inapposite. *Bearsdall* involved review of a ***summary judgment*** ruling, a very different standard of review. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 971 (7th Cir. 2020).

In *Bell,* this Court discussed *Beardsall* at length, and distinguished it on these exact grounds, explaining that "the result is different in this

case because of the difference between a motion to dismiss on the pleadings and a motion for summary judgment." *Bell,* 982 F.3d 468, 483 ("How reasonable consumers actually understand defendants' "100% Grated Parmesan Cheese" labels is a question of fact that cannot be resolved on the pleadings.").

To survive the motion to dismiss, Plaintiffs were required to allege that Chobani's zero sugar label was "either (1) literally false, or (2) likely to mislead (either through a statement or material omission) a reasonable consumer." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Plaintiffs have done both.

***First***, Chobani's label is literally false. Allulose has the same molecular formula as fructose. A42 ¶¶37-38. The FDA has described allulose as a sugar. *See* A16 (Allulose Guidance); A167, A181 (*Bonumose* brief). The manufacturers of allulose have described it as a sugar. A42-43 ¶¶41-42. Even Chobani itself, in its new asterisked label declares that allulose contains sugar. Dkt. #26-6 (PageID #306).

***Second***, Plaintiffs alleged that "allulose is a sugar" and that Defendant's label misled them as to the presence of sugar in the product. A35-36 ¶¶ 8-11, A41 ¶ 35; see *also* A58 ¶114 ("a reasonable interpretation

of the labels: (a) "zero sugar" and (b) "no sugar" is that the labeled food

actually has: (x) zero sugar and (y) no sugar"). This is more than sufficient

to "nudge their claims across the line from conceivable to plausible," and

is the exact sort of case where it is "best that six jurors, rather than three

judges, decide." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th

Cir. 2020); *see also Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927,

938 (7th Cir. 2021); *Calderon*, 2023 WL 3627797, at *6 ("same"); *Biffar v.*

*Pinnacle Foods Grp., LLC*, 2016 WL 7429130, at *3 (same); *Schneider v.*

*Mott's LLP*, 2022 WL 4314207, at *6 (same); *Reid*, 780 F.3d. at 958

(same).[7]

Moreover, Plaintiffs are not the only people who have been

deceived. Scores of individual consumers have cared enough to send

formal comments to the FDA's regulatory docket expressing their

confusion over allulose. For exemplar purposes only, Plaintiffs ask that

this Court take judicial notice of a comment from Christine Yeagy

received by the FDA on August 16, 2024. The undersigned does not

---

[7] For this reason, Appellee's reliance on *Wertymer v. Walmart, Inc.,* 142 F.4th 491 (7th Cir. 2025) is misplaced. That case turned on whether allegations that honey was heated were sufficient to allege that it was not "raw." *Id*. at 494. Here, Plaintiffs allege that they interpreted "zero sugar" to mean "zero sugar," and that Chobani's label was misleading because "allulose is a sugar."

represent Ms. Yeagy, and has never spoken with her, but she cared enough to petition her government to ask:

> What are ingredients such as Allulose, Sorbitol, Hydrogenated Starch Hydrolysates, Rebaudioside A, Acesulfame Potassium, Erythritol, and Luo Han Gao, and why are they in my food? … I want to know what's in my food and I want to be able to trust the information on food labels.[8]

Chobani's label is literally false, it is alleged and documented to have deceived a broad class of consumers. This Court should allow Plaintiffs to develop their claims through discovery, and the District Court's dismissal of this lawsuit was in error.

## CONCLUSION

For the reasons set forth above Appellants request this Court reverse the dismissal entered by the Northern District of Illinois and remand for further proceedings.

---

[8] The Court may take judicial notice of the statements made in these 100 plus public comments. *See Indep. Tr. Corp. v. Stewart Info. Services Corp.,* 665 F.3d 930, 943 (7th Cir. 2012) *see also e.g. Gubala v. CVS Pharmacy, Inc.*, 14 C 9039, 2016 WL 1019794, at *2 (N.D. Ill. Mar. 15, 2016)(taking notice of comments on FDA regulations).

Dated: December 17, 2025          Respectfully submitted,

/s/ Yates M. French

Yates M. French
Rathje Woodward LLC
300 E. Roosevelt Road, Suite 300
Wheaton, IL 60187
Ph: (630) 668-8500
Fax: (630) 668-9218
yfrench@rathjelaw.com

Alexander H. Burke
Burke Law Offices, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Ph: (312) 729-5288
aburke@burkelawllc.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE WITH
## FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)

The undersigned counsel of record for the Plaintiffs-Appellants, Jason Franco and Abigail Franco, individually and on behalf of all other similarly situated class and subclass members furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is six thousand seven hundred and ninety-seven words (6,797 words).

Dated: December 17, 2025                Respectfully submitted,

/s/ Yates M. French
Yates M. French
Rathje Woodward LLC
300 E. Roosevelt Road, Suite 300
Wheaton, IL 60187
Ph: (630) 668-8500
Fax: (630) 668-9218
yfrench@rathjelaw.com

Alexander H. Burke
Burke Law Offices, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Ph: (312) 729-5288
aburke@burkelawllc.com
*Attorney for Plaintiffs-Appellants*

## <u>PROOF OF SERVICE</u>

The undersigned, counsel for the Plaintiffs-Appellants, Jason Franco and Abigail Franco, individually and on behalf of all other similarly situated class and subclass members hereby certifies that on December 17, 2025, a copy of the Brief, was served pursuant to the Electronic Filing Procedures and using the CM/ECF system, and that a true and correct electronic copy was thereby caused to be served on counsel of record.

Dated: December 17, 2025          /s/ Yates M. French

Yates M. French
Rathje Woodward LLC
300 E. Roosevelt Road, Suite 300
Wheaton, IL 60187
Ph: (630) 668-8500
Fax: (630) 668-9218
yfrench@rathjelaw.com
*Attorney for Plaintiffs-Appellants*