**No. 25-2087**

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

JASON FRANCO, et al.,

Plaintiffs-Appellants,

v.

CHOBANI, LLC,

Defendant-Appellee.

On Appeal from the United States District Court for the Northern District of Illinois, No. 1:23-cv-03047 (John J. Tharp, Jr., J.)

## BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE*

*Of Counsel:*

ROBERT FOX FOSTER
  *Acting General Counsel*
  *U.S. Department of Health and Human Services*

SEAN R. KEVENEY
  *Chief Counsel*
  *U.S. Food and Drug Administration*

WENDY VICENTE
  *Deputy Chief Counsel, Litigation*

ELIZABETH TETER-GOSSMANN
  *Associate Chief Counsel*
  *Office of the Chief Counsel*
  *U.S. Food and Drug Administration*

BRETT A. SHUMATE
  *Assistant Attorney General*

ANDREW S. BOUTROS
  *United States Attorney*

DANIEL TENNY
GABRIEL I. SCHONFELD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7219*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3306*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................. ii

INTEREST OF *AMICUS CURIAE*.......................................................1

STATEMENT OF THE CASE ...............................................................2

    A.    Factual Background...............................................................2

    B.    Statutory and Regulatory Background ...................................3

        1.    Nutrition Labeling and Nutrient Content Claims........3

        2.    FDA's Regulatory Definition of "Total Sugars".............4

        3.    FDA Action Regarding Sugars Metabolized Differently from Traditional Sugars...........................6

    B.    Prior Proceedings .................................................................8

ARGUMENT ...................................................................................11

ALLULOSE IS INCLUDED IN FDA'S "TOTAL SUGARS" DEFINITION ...........................................................................11

CONCLUSION ................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                 **Page(s)**

*Ali v. Federal Bureau of Prisons,*
552 U.S. 214 (2008) .................................................................. 16

*Boechler, P.C. v. Commissioner,*
596 U.S. 199 (2022) .................................................................. 17

*Chickasaw Nation v. United States,*
534 U.S. 84 (2001) .............................................................. 17, 20

*City of Providence v. Barr,*
954 F.3d 23 (1st Cir. 2020) ..................................................... 16

*Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers,*
676 F.3d 566 (7th Cir. 2012) ............................................. 21, 22

*Glover v. Ocwen Loan Servicing, LLC,*
127 F.4th 1278 (11th Cir. 2025) .............................................. 20

*Kisor v. Wilkie,*
588 U.S. 558 (2019) ................................... 9, 10, 12, 20, 22

*McBoyle v. United States,*
283 U.S. 25 (1931) ................................................................... 18

*Nix v. Hedden,*
149 U.S. 304 (1893) ................................................................. 18

*PLIVA, Inc. v. Mensing,*
564 U.S. 604 (2011) ................................................................. 10

*Remini St., Inc. v. Oracle USA, Inc.,*
586 U.S. 334 (2019) ................................................................. 17

*Turek v. General Mills, Inc.,*
662 F.3d 423 (7th Cir. 2011) ..................................... 3-4, 4, 23

*White v. United Airlines, Inc.*,
  987 F.3d 616 (7th Cir. 2021)............................................... 16-17, 17, 19

*Yates v. United States*,
  574 U.S. 528 (2015)......................................................................18

**Statutes:**

21 U.S.C. § 343(q)(1)(D) .................................................................. 3, 4

21 U.S.C. § 343(r) .................................................................................. 1

21 U.S.C. § 343(r)(1)(A) .................................................................... 3, 4

21 U.S.C. § 343(r)(1)(B) ........................................................................ 13

21 U.S.C. § 343(r)(2)(A)(i).................................................................. 3, 4

21 U.S.C. § 343(r)(3) ............................................................................. 13

21 U.S.C. § 343-1(a)(5) ..................................................... 1, 4, 9, 11, 22

**Regulations:**

21 C.F.R. § 101.9(c)(6)(ii).........1, 2, 3, 4, 5, 9, 11, 15, 15-16, 18, 19, 22, 24

21 C.F.R. § 101.9(d) ................................................................................3

21 C.F.R. § 101.13(b) ......................................................................... 3, 4

21 C.F.R. § 101.60(c)(1) ......................................................................... 1

21 C.F.R. § 101.60(c)(1)(i)............................................................. 1, 5, 14

21 C.F.R. § 101.80 ................................................................................ 13

21 C.F.R. § 101.80(c)(2)(i)(H) .............................................................. 14

21 C.F.R. § 101.80(c)(2)(ii)(B)............................................................. 14

21 C.F.R. § 101.80(c)(2)(iii)(A)............................................... 13, 14, 19, 20

**Other Authorities:**

*All*, Cambridge Dictionary: English Grammar Today,
    https://perma.cc/29NG-VMJF ...................................................................... 11

*All*, Random House Unabridged Dictionary of American English,
    https://perma.cc/WV7L-KS28 ................................................................. 11

FDA, *The Declaration of Allulose and Calories from
Allulose on Nutrition and Supplement Facts Labels:
Guidance for Industry* (Oct. 2020),
    https://perma.cc/NDM4-ND5R .............................. 2, 3, 5, 6, 7, 8, 21, 22

56 Fed. Reg. 60366 (Nov. 27, 1991) ....................................................... 12

58 Fed. Reg. 2079 (Jan. 6, 1993) .................................................. 5, 12, 13

67 Fed. Reg. 71461 (Dec. 2, 2002) .................................................. 14, 15

81 Fed. Reg. 33742 (May 27, 2016) ...................................................... 5, 6

85 Fed. Reg. 66335 (Oct. 19, 2020) ....................................................... 14

*Such*, Random House Unabridged Dictionary of American English,
    https://perma.cc/4VEH-Y3BZ ................................................................. 18

*Such as*, Merriam-Webster Dictionary,
    https://perma.cc/N8AQ-5235 ................................................................. 18

iv

## INTEREST OF *AMICUS CURIAE*

Because this case involves the interpretation of food labeling regulations issued and administered by the United States Food and Drug Administration (FDA) under the Federal Food, Drug, and Cosmetic Act (FDCA), this Court invited the United States to file an amicus brief addressing "whether allulose is a 'sugar' as that term is defined at 21 C.F.R. § 101.9(c)(6)(ii)." Order (Feb. 23, 2026).

Congress has authorized FDA to set criteria for nutrient content claims (like "reduced fat" or "low sodium") made in food labeling. *See* 21 U.S.C. §§ 343(r), 343-1(a)(5). As relevant to this case, those criteria preempt state labeling requirements respecting nutrient content claims that are "not identical to" the requirements established by FDA. *Id.* § 343-1(a)(5).

Acting under that authority, FDA has established criteria for when a food may be labeled with a nutrient content claim that it "contains no sugars." 21 C.F.R. § 101.60(c)(1). "[A] food may not be labeled with such terms unless" it contains less than half a gram per serving of "sugars," *id.* § 101.60(c)(1)(i), "defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and

sucrose)," *id.* § 101.9(c)(6)(ii). The United States has a substantial interest in the proper interpretation and application of these statutory and regulatory requirements.

For the reasons explained below, the answer to the Court's question is "yes"—allulose is a "sugar" as that term is defined in 21 C.F.R. § 101.9(c)(6)(ii).

## STATEMENT OF THE CASE

### A.    Factual Background

Defendant Chobani, LLC markets "Chobani Zero Sugar" yogurt. A38. As the name suggests, the labeling for Chobani Zero Sugar contains claims regarding its sugar content, including that it contains "zero sugar" and "no sugar." A41.

Each serving of Chobani Zero Sugar contains about four grams of allulose, a sweet substance naturally found in small quantities in figs, grapes, molasses, brown sugar, and wheat. A33, A41. In chemical terms, allulose is a monosaccharide—a type of simple sugar. FDA, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* 2 (Oct. 2020), https://perma.cc/NDM4-ND5R ("2020 Allulose Guidance"). But allulose

2

is metabolized differently than traditional sugars like sucrose, fructose, lactose, and glucose, and has different physiological effects. Unlike traditional sugars, allulose provides only minimal calories, does not meaningfully raise blood sugar or insulin levels, and does not promote tooth decay. *Id.* at 7-8.

### B.   Statutory and Regulatory Background

#### 1.   Nutrition Labeling and Nutrient Content Claims

Under the Federal Food, Drug, and Cosmetic Act (FDCA), food sold for human consumption is misbranded unless it has nutrition labeling that states the quantities of various nutrients that it contains. 21 U.S.C. § 343(q)(1)(D). Today, those declarations are generally made in the familiar black-and-white "Nutrition Facts" label. 21 C.F.R. § 101.9(c)(6)(ii), (d). In addition, manufacturers that choose to make "nutrient content claim[s]," which "characterize[] the level of a nutrient" required to be declared in nutrition labeling must (as relevant here) do so in accordance with regulations promulgated by FDA. 21 C.F.R. § 101.13(b); 21 U.S.C. § 343(r)(1)(A), (2)(A)(i).

Congress understood the importance of uniform federal labeling rules for food products that are most often "sold nationwide." *Turek v.*

*General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). If states could "impose disclosure requirements of their own" on such products, "[m]anufacturers might have to print 50 different labels." *Id.* To prevent this, the FDCA expressly preempts any state "requirement[s]" regarding nutrient content claims that are not "identical" to those imposed by federal law. 21 U.S.C. § 343-1(a)(5). This Court has held that because this express preemption provision does not apply to the imposition of "*identical* requirement[s]," it does not prevent states from "enforce[ing] a violation of the [FDCA] as a violation of state law." *Turek*, 662 F.3d at 426.

### 2. FDA's Regulatory Definition of "Total Sugars"

"Total Sugars" is one of the nutrients that must be declared in a food's nutrition labeling, 21 U.S.C. § 343(q)(1)(D); 21 C.F.R. § 101.9(c)(6)(ii), and for which nutrient content claims may therefore be made (as relevant here) only in accordance with FDA regulations, 21 U.S.C. § 343(r)(1)(A), (2)(A)(i); 21 C.F.R. § 101.13(b). FDA defines "Total Sugars" for these purposes as "the sum of all free mono- and

4

disaccharides (such as glucose, fructose, lactose, and sucrose)."[1] 21

C.F.R. § 101.9(c)(6)(ii) (nutrition labeling); *see also id.* § 101.60(c)(1)(i)

(incorporating same definition for nutrient content claims). A food that

contains more than half a gram per serving of "Total Sugars" may not

be labeled with claims "represent[ing] that [it] contains no sugars." *Id.*

§ 101.60(c)(1)(i).

The "Total Sugars" definition reflects FDA's "traditional[]" view

that whether a substance is a sugar for purposes of nutrition labeling

and nutrient content claims depends on its "chemical structure." 2020

Allulose Guidance 6. When FDA first adopted that definition, it

expressly rejected comments suggesting that it instead define "'sugars'

based upon physiological characteristics"—such as "digestibility, caloric

value, glycemic index, and serum insulin response"—"rather than the

number of saccharide units." 58 Fed. Reg. 2079, 2098, 2177 (Jan. 6,

1993).

---

[1] This definition previously referred to "Sugars" rather than "Total Sugars." The current terminology dates to 2016, when FDA—without modifying the definition itself—renamed "Sugars" to "Total Sugars" to accommodate the addition of a new "Added Sugars" declaration. *See* 81 Fed. Reg. 33742, 33798 (May 27, 2016). We refer to "Total Sugars" except in direct quotations from materials that use the older nomenclature.

### 3.    FDA Action Regarding Sugars Metabolized Differently from Traditional Sugars

Since FDA first adopted the "Total Sugars" definition in 1993, "advances in food technology" have led to the wide availability of "novel sugars" that are metabolized and affect the body differently than traditional ones. 2020 Allulose Guidance 6. FDA has addressed these substances in various regulatory settings.

Most relevant here, FDA has specifically addressed allulose, the sugar at issue in this case. In 2016, in the preamble to a final rule amending its nutrition labeling regulations, FDA stated that "substances are included or excluded … [in the definition of 'Total Sugars'] based on whether they are a free mono or disaccharide rather than on their physiological effects," 81 Fed. Reg. 33742, 33837 (May 27, 2016), and that allulose, "as a monosaccharide, must be included in the declaration of ['Total Sugars'] pending any future rulemaking that would otherwise exclude [it]," *id.* at 33795-96 (responding to proposals that allulose be excluded from "Total Sugars" based on its physiological effects).

In 2020, partly in response to citizen petitions asking that the agency exclude allulose from the "Total Sugars" definition, FDA issued

6

a guidance document stating its intent to exercise enforcement discretion with respect to certain nutrition labeling requirements that would otherwise apply to foods sweetened with allulose. 2020 Allulose Guidance 1-2. The agency made no such statement with respect to nutrient content claims (including claims that a product contains no sugars).

Specifically, the 2020 Allulose Guidance stated that FDA would exercise discretion not to take enforcement action with respect to three aspects of nutrition labeling for foods containing allulose: (1) the omission of allulose from the declared quantities of "Total Sugars" and "Added Sugars," (2) the exclusion of allulose from the percent Daily Value for "Added Sugars," and (3) the use of a caloric value for allulose of 0.4 calories per gram (approximately 10 times smaller than the amount of calories that FDA regulations generally require to be declared per gram of "Total Sugars") when determining the declared quantity of "Calories." 2020 Allulose Guidance 4-9.

FDA's decision to exercise enforcement discretion as to these requirements did not alter the underlying regulatory definition on which they depend. Rather, the agency indicated only that it intended

7

to decline enforcement "pending future rulemaking regarding amending the definition of 'Total Sugars.'" *Id.* at 8; *see also id.* at 1 (stating intent to exercise enforcement discretion "pending review of the issues in a rulemaking").

FDA explained that it was using this approach because its "current thinking" on what should be included in the "Total Sugars" declaration had moved away from a singular focus on "chemical structure." 2020 Allulose Guidance 6. Instead, "consistent with the [FDCA's] goal . . . for the nutrient declarations to assist consumers in maintaining healthy dietary practices," the agency stated that it "should [also] consider . . . other evidence" of the extent to which a substance provides calories, promotes tooth decay, or raises blood sugar and insulin levels. *Id.* at 6-7. FDA determined that declining to enforce specific nutrition labeling requirements pending future rulemaking was appropriate as to allulose because it provides minimal calories, does not cause cavities, and does not raise blood sugar or insulin. *Id.* at 8.

## B.    Prior Proceedings

Plaintiffs are purchasers of Chobani Zero Sugar yogurt. On behalf of themselves and several putative classes, they allege that Chobani

8

violated state consumer-protection laws by labeling a product containing allulose with claims that it contains "zero" or "no" sugar. Plaintiffs filed suit in the district court in May of 2023. A32-148. Chobani moved to dismiss, Dkt. 19, arguing in relevant part that plaintiffs' claims are expressly preempted because they seek to impose liability based on state-law requirements for nutrient content claims that are "not identical" to the federal criteria established under the FDCA, 21 U.S.C. § 343-1(a)(5).

The district court agreed, and dismissed plaintiffs' claims as preempted. It began with the text of the "Total Sugars" definition, which includes "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii); SA34. The court then found it "reasonable" to conclude that the "such as" parenthetical serves to "limit the types of mono- and disaccharides that are included in the definition"—since the parenthetical would otherwise be superfluous in the district court's view—and concluded that it is "genuinely ambiguous" whether allulose is included. SA34 & n.37 (citing *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019)).

9

Based on that finding of ambiguity, the district court deferred to what it viewed as FDA's interpretation, in the 2020 Allulose Guidance, of the relevant regulatory language—that "a substance 'such as' glucose, fructose, etc., is one that provides an expected number of calories per gram, increases blood [sugar] and insulin levels, and can lead to cavities." SA34-35, SA34 n.36. That purported interpretation was entitled to deference, the court held, because it was consistent with the language of the regulatory definition, represented FDA's "authoritative [and] official position," and reflected the agency's "fair and considered judgment." SA33-37 (alteration in original) (first quoting *Kisor*, 588 U.S. at 577; and then quoting *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011)).

Applying that interpretation to the undisputed facts that allulose does not provide significant calories, increase blood sugar or insulin levels, or promote tooth decay, the district court concluded that because "allulose is not a sugar" under the "Total Sugars" definition, Chobani's product "contains zero grams of sugar." SA40-41. The court held that FDA regulations therefore allow Chobani's product to bear nutrient content claims that it contains "zero" or "no" sugar, and that plaintiffs'

10

claims are expressly preempted because they would impose liability for statements that are authorized under federal law. *Id.*; *see also* 21 U.S.C. § 343-1(a)(5).

Plaintiffs timely appealed the district court's dismissal order. Following briefing and oral argument, this Court invited the government to file an *amicus* brief expressing "FDA's views as to whether allulose is a 'sugar' as that term is defined at 21 C.F.R. § 101.9(c)(6)(ii)." Order (Feb. 23, 2026).

## ARGUMENT

### ALLULOSE IS INCLUDED IN FDA'S "TOTAL SUGARS" DEFINITION

**1.a.**    The text of the "Total Sugars" definition is unambiguous—it includes "*all* free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii (emphasis added). When "all" refers collectively to a class of things—like free mono- and disaccharides—it includes "every one of" the members of that class. *All*, Random House Unabridged Dictionary of American English, https://perma.cc/WV7L-KS28 ("[U]sed in referring to individuals or particulars, taken collectively[]: *all students*."); *see also All*, Cambridge Dictionary: English Grammar Today, https://perma.cc/29NG-VMJF

(explaining that all "means 'every one'" and can be used to "refer[] to a whole class of people or things . . . : *All children love stories.* (i.e. every child in the world)"). Allulose is part of "Total Sugars" because the plain meaning of the regulatory definition includes *every* free monosaccharide.

The history of the "Total Sugars" definition underscores the plain meaning of its text. *See Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (directing courts to interpret regulations based on their "text, structure, history, and purpose"). FDA has expressly rejected proposals to define "Total Sugars" based on a holistic review of physiological effects rather than a bright-line test of chemical structure. In the rulemaking that produced the current definition, FDA originally proposed to define "sugars" to include not only saccharides, but also other related substances to the extent they have "similar sweetening, nutritional, and metabolic effects." 56 Fed. Reg. 60366, 60388 (Nov. 27, 1991). Commenters ultimately persuaded the agency that those related substances should be treated separately, and the agency adopted a final definition that "include[s] only free monosaccharides and disaccharides." 58 Fed. Reg. at 2097-99. In doing so, FDA rejected other

12

comments urging it to adopt a "sugars" definition based on "physiological characteristics" like "digestibility, caloric value, glycemic index, and serum insulin response," and to exclude lactose because its "digestion and absorption" differs in some respects from other simple sugars. *Id.* at 2098. The agency explained that it was instead adopting a definition of "Sugars" that depends only on "the number of saccharide units" that a substance contains. *Id.*

The surrounding regulatory context further demonstrates that the "Total Sugars" definition is based exclusively on chemical structure. In addition to the regulations that directly govern the nutrient content claims at issue in this case, FDA has established a rule governing the health claim that a sweetener is "noncariogenic"—that it does not promote tooth decay. *See* 21 C.F.R. § 101.80.[2] As relevant here, a food is generally ineligible for a health claim regarding tooth decay if it contains more sugars than would be permitted under the regulation governing "no sugars" nutrient content claims. *Id.* § 101.80(c)(2)(iii)(A)

---

[2] Like nutrient content claims, claims that a nutrient which must be disclosed in nutrition labeling has a "relationship . . . to a disease or a health-related condition" generally may be made only as permitted in FDA regulations. 21 U.S.C. § 343(r)(1)(B), (3). FDA generally refers to such claims as "health claims."

(providing generally that a "food shall meet the requirement in § 101.60(c)(1)(i) with respect to sugars content"). FDA has made an exception to that rule, however, for "[t]he sugar[] D-tagatose" (another monosaccharide that is metabolized differently than traditional sugars), because it is "unlike other sugars" in that it does not promote tooth decay. *Id.* § 101.80(c)(2)(i)(H), (ii)(B), (iii)(A).

This exception applies to tooth decay claims only—it does not extend to nutrient content claims. *See* 21 C.F.R. § 101.80(c)(2)(iii)(A). But such a claim-specific exception would have been unnecessary if the generally applicable definition of "Total Sugars" were already limited to traditional sugars and already excluded monosaccharides that are metabolized differently and have different physiological effects.

The exception's regulatory history confirms as much. Although tagatose does not promote tooth decay and provides fewer calories than traditional sugars, 67 Fed. Reg. 71461, 71463-64 (Dec. 2, 2002); 85 Fed. Reg. 66335, 66337 (Oct. 19, 2020), FDA rejected a request that it broadly exclude that substance from the regulatory definition of "sugars" for purposes of the nutrition labeling and nutrient content claim regulations. 67 Fed. Reg. at 71464-66 (declining to "allow a

14

labeling claim identifying a sugar as a nonsugar"). Instead, the agency "exempt[ed] D-tagatose from the 'sugar free' requirement for the [tooth decay] health claim" in particular, by "provid[ing] that a food bearing the claim be 'sugar free' except for D-tagatose". *Id.* at 71466. That narrow exemption does not mean that FDA has excluded noncariogenic sugars from the broader "Total Sugars" definition based on their physiological effects. *Cf.* Chobani Br. 26-27. The agency's regulations demonstrate that the opposite is true—these substances have consistently been included in "Total Sugars" based on their chemical structure.

In sum, all the textual, contextual, and historical indicia of regulatory meaning in this case point in the same direction. FDA's regulatory definition of "Total Sugars" includes "all" free monosaccharides, regardless of their individual physiological effects. 21 C.F.R. § 101.9(c)(6)(ii).

**b.**    The district court disagreed. Invoking the canon against surplusage, the district court sought to avoid rendering superfluous the "Total Sugars" definition's parenthetical reference to "all free mono- and disaccharides (*such as* glucose, fructose, lactose, and sucrose)" *See* 21

15

C.F.R. § 101.9(c)(6)(ii) (emphasis added). To accomplish that goal, the district court read the "such as" parenthetical as a "limit [on] the types of mono- and disaccharides that are included in the ['Total Sugars'] definition." SA34-35. Under the district court's limiting construction, sugars "such as" glucose, fructose, lactose, and sucrose include only those that "present the same nutritional characteristics" as those traditional ones in terms of caloric value, impact on blood sugar and insulin levels, and tendency to promote tooth decay. SA34-35.

The district court's reasoning does not follow. Because drafters sometimes include "technically unnecessary examples . . . out of an abundance of caution," courts do not "woodenly apply limiting principles every time" that legal text "includes a specific example along with a general phrase." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 226-27 (2008) (quotation marks omitted); *see also City of Providence v. Barr*, 954 F.3d 23, 43 (1st Cir. 2020) (cautioning that the canon against surplusage should not "be employed inflexibly to rule out every interpretation of a statute that treats certain language as illustrative or clarifying"). This Court has explained that "[r]edundancy happens all the time" and is "rarely fatal [to an interpretation] on its own." *White v.*

16

*United Airlines, Inc.*, 987 F.3d 616, 622 (7th Cir. 2021). The surplusage canon on which the district court relied recognizes that redundance may provide "'a clue as to the better interpretation'" of a text, but the ultimate task remains "to discern the meaning of the [regulation]," and it is hardly uncommon that "'the better overall reading . . . contains some redundancy.'" *Id.* (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)).

Here, the better reading is that the parenthetical "is meant simply to be illustrative, [and] hence redundant" of the broader text it follows. *See Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001). The "use of parentheses" in itself, combined with the "lack of any suggestion that [FDA] intended the . . . list to be complete," "emphasizes the fact that that which is within" is meant to illustrate rather than restrict what comes before. *Id.*; *see also Boechler, P.C. v. Commissioner*, 596 U.S. 199, 206 (2022) (explaining that a parenthetical "is typically used to convey an 'aside' or 'afterthought'").

The fact that the parenthetical contains a list beginning with "such as"—synonymous in this context with "including" or "for example"—only underscores the point. The district court gave "such as"

a restrictive meaning rather than an inclusive one. SA34-35; *see also* Chobani Br. 20-21 (citing dictionary definitions to that effect), but the phrase can also be "used to introduce an example or series of examples." *Such as*, Merriam-Webster Dictionary, https://perma.cc/N8AQ-5235; *Such*, Random House Unabridged Dictionary of American English, https://perma.cc/4VEH-Y3BZ ("He considers quiet pastimes, such as reading and chess, a bore.").

That is by far the more natural reading here, where "such as" appears in a parenthetical, follows language inclusive of "all" things in a category having precise technical boundaries ("all free mono- and disaccharides"),[3] and precedes a non-exhaustive list of the same ("glucose, fructose, lactose, and sucrose"). 21 C.F.R. § 101.9(c)(6)(ii). Nobody, for example, would read the phrase "all states that border the

---

[3] *Contra* Chobani's suggestion, *see* Chobani Br. 23-25 & n.3, this is not a case about whether to adopt an unreasonably literal or technical reading of a term that means something else in context or common usage, *see, e.g.*, *Nix v. Hedden*, 149 U.S. 304, 307 (1893) (a tomato is not a "fruit"); *McBoyle v. United States*, 283 U.S. 25, 26-27 (1931) (an airplane is not a "motor vehicle"); *Yates v. United States*, 574 U.S. 528, 539-46 (2015) (plurality opinion) (a fish is not the same type of "tangible object" as a "record" or "document"). Chobani does not dispute that allulose is a "monosaccharide" or suggest that the term has any ordinary meaning apart from its technical one.

Mississippi River (such as Wisconsin, Illinois, and Kentucky)" as including only states on its eastern bank, or the phrase "all member clubs of the National Football League (such as the Detroit Lions, the Minnesota Vikings, and the Buffalo Bills)" to include only teams that have never won a Super Bowl. Likewise, FDA's use of an illustrative "such as" parenthetical did not negate its choice to define "Total Sugars" as including "*all* free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii) (emphasis added). "It would be peculiar to read inclusive language embedded within a broadly worded definition as performing an exclusionary function." *White*, 987 F.3d at 621.

Finally, the district court's interpretation of the "Total Sugars" definition would create redundancies of its own—a meaningless reference to "all" monosaccharides in a regulatory definition that would only apply to some, *see* 21 C.F.R. § 101.9(c)(6)(ii); *supra* pp. 11-12, and surplus language elsewhere that would needlessly exempt a non-sugar from a limitation on sugar content, *see* 21 C.F.R. § 101.80(c)(2)(iii)(A); *supra* pp. 13-15. Since it is not possible to read the regulation to create *no* redundancy, the question is *where* redundancy should be found. Here, the best approach is to give effect to both the "broad language of

19

the overarching ['Total Sugars' definition]," *see Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1290 (11th Cir. 2025), as well as the narrow exception specifically codified in the regulation governing tooth decay health claims, *see* 21 C.F.R. § 101.80(c)(2)(iii)(A). This Court should reject the district court's interpretation, which strains for independent meaning in an inclusively worded parenthetical that most naturally reads as "illustrative, [and] hence redundant" of the broader definitional language that precedes it. *See Chickasaw Nation*, 534 U.S. at 89.

2.     The district court also gave "controlling" weight to what it regarded as the 2020 Allulose Guidance's interpretation of the "such as" parenthetical. SA33-35 & nn.36-37. That was erroneous at the outset because agency guidance is never entitled to such deference on the meaning of regulatory text that is not "genuinely ambiguous." *Kisor*, 588 U.S. at 574. As discussed above, all monosaccharides means all monosaccharides, and the available tools of construction point toward the same conclusion.

Moreover, FDA in the 2020 Allulose Guidance did not purport to be construing the "Total Sugars" definition at all, much less giving it a

20

construction that excludes allulose. Instead, FDA described its "current thinking" regarding the information the agency "should consider" in deciding how foods containing sugars metabolized differently from traditional ones should be labeled, and stated that "pending *future rulemaking* regarding *amending the definition of 'Total Sugars'*" FDA intends to "exercise enforcement discretion"—in other words, not to enforce its *current rules*—regarding the declaration of "Calories" and "Total Sugars" in the nutrition labeling of foods containing allulose. 2020 Allulose Guidance 6-8 (emphasis added).

The 2020 Allulose Guidance did not, in other words, provide a "considered answer" to an "interpretive question" on the meaning of the "Total Sugars" definition. *See Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers*, 676 F.3d 566, 576 (7th Cir. 2012). Rather, FDA took as a given that the present definition includes allulose, indicated that it may consider in a future rulemaking whether that should change, and announced that in the interim it would decline to enforce certain specific requirements that flow from the current definition as a matter of law.

21

The 2020 Allulose Guidance could not in any case have made an "authoritative pronouncement" on the meaning of the "Total Sugars" definition. *Kisor*, 588 U.S. at 577 (quotation marks omitted). That is because it is non-binding guidance that "does not establish any rights for any person and is not binding on FDA or the public," and does not prevent regulated parties from "us[ing] an alternative approach if it satisfies the requirements of the applicable statutes and regulations." 2020 Allulose Guidance 1. In other words, FDA itself has "disclaimed the use" of the 2020 Allulose Guidance as an "authoritative or binding interpretation[] of [FDA's] own rules." *Exelon*, 676 F.3d at 577; *Kisor*, 588 U.S. at 577 (quoting *Exelon*, 676 F.3d at 577).

3.　　For the reasons discussed above, the Court should decline to endorse the district court's holding that allulose is not a "sugar" within the meaning of 21 C.F.R. § 101.9(c)(6)(ii). The government takes no position, however, on the ultimate question of whether plaintiffs' claims are preempted by federal law—either expressly under 21 U.S.C. § 343-1(a)(5), or under another theory that the district court had no cause to consider.

22

In particular, the government takes no position on whether plaintiffs' claims may prove to be preempted at a later stage of this litigation. Where plaintiffs invoke broad state law requirements—such as consumer protection statutes that bar "unfair trade practices," or common-law duties to exercise "reasonable care"—in a context where federal preemption bars some but not all theories of recovery, *see, e.g.*, *Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011), the ultimate question of preemption may turn on fairly subtle distinctions not clearly presented at the earliest moments of litigation when the plaintiff's theory of their case is at its least refined, *see, e.g.*, Brief for the United States as Amicus Curiae Supporting Petitioner at 15-25, 33-35, *Monsanto Co. v. Durnell*, No. 24-1068 (U.S. Mar. 2, 2026). To the extent this Court remands for further proceedings, it should not foreclose the parties from litigating (or the district court from deciding) the distinct preemption issues that may develop at later stages of the case.

23

**CONCLUSION**

For these reasons, the answer to the Court's question is "yes"—

allulose is a "sugar" as that term is defined at 21 C.F.R. § 101.9(c)(6)(ii).

Respectfully submitted,

*Of Counsel:*

ROBERT FOX FOSTER
  *Acting General Counsel*
  *U.S. Department of Health and*
    *Human Services*

SEAN R. KEVENEY
  *Chief Counsel*
  *U.S. Food and Drug*
    *Administration*

WENDY VICENTE
  *Deputy Chief Counsel, Litigation*

ELIZABETH TETER-GOSSMANN
  *Associate Chief Counsel*
  *Office of the Chief Counsel*
  *U.S. Food and Drug*
    *Administration*

BRETT A. SHUMATE
  *Assistant Attorney General*

ANDREW S. BOUTROS
  *United States Attorney*

DANIEL TENNY
 *s/ Gabriel I. Schonfeld*
GABRIEL I. SCHONFELD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7219*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3306*
  *Gabriel.I.Schonfeld@usdoj.gov*

June 2026

24

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) and Seventh Circuit Rule 29 because it contains 4,359 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/Gabriel I. Schonfeld*
Gabriel I. Schonfeld

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Gabriel I. Schonfeld*
Gabriel I. Schonfeld