**No. 25-2087**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**JASON FRANCO,** *et al.***,**

*Plaintiff — Appellant,*

v.

**CHOBANI, LLC**

*Defendant — Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois
No. 1:23-cv-03047 (John J. Tharp, Jr., District Judge)

## DEFENDANT-APPELLEE CHOBANI, LLC'S RESPONSE TO FDA'S AMICUS BRIEF

Andrew S. Tulumello
Arianna Scavetti
Sebastian Laguna
**WEIL GOTSHAL & MANGES LLP**
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000

July 20, 2026

*Counsel for Defendant - Appellee Chobani, LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT..........................................................................................6

I.    FDA's View Of The Allulose Guidance Is Flawed And Does
      Not Defeat Preemption. ................................................................6

II.   Chobani's Reasonable Consumer Argument Is Dispositive. ...............13

CONCLUSION ....................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................15

*Bober v. Glaxo Wellcome PLC,*
    246 F.3d 934 (7th Cir. 2001)......................................................................14

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.,*
    19 F.4th 1002 (7th Cir. 2021)....................................................................13

*Easom v. US Well Servs., Inc.,*
    37 F.4th 238 (5th Cir. 2022)......................................................................10

*Fischer v. United States,*
    603 U.S. 480 (2024)......................................................................................7

*Gustafson v. Alloyd Co.,*
    513 U.S. 561 (1995)..................................................................................8, 10

*Jefferson v. Ambroz,*
    90 F.3d 1291 (7th Cir. 1996)......................................................................15

*McBoyle v. United States,*
    283 U.S. 25 (1931)........................................................................................8

*Monsanto Co. v. Durnell,*
    609 U.S. ____ (June 25, 2026), 2026 WL 1825691 .........................................16

*Oracle Int'l Corp. v. Rimini St., Inc.,*
    123 F.4th 986 (9th Cir. 2024)....................................................................10

*Peabody Twentymile Mining, LLC v. Sec'y of Lab.,*
    931 F.3d 992 (10th Cir. 2019)....................................................................12

*Wertymer v. Walmart, Inc.,*
    142 F.4th 491 (7th Cir. 2025)....................................................................14

*Yates v. United States*,
  574 U.S. 528 (2015)..............................................................................................8

**Statutes**

21 U.S.C. § 343(q)............................................................................8, 9, 10, 13

**Regulations**

21 C.F.R. § 101.9 ....................................................................................*passim*

21 C.F.R. § 101.60.............................................................................................3, 6

21 C.F.R. § 101.80.............................................................................................11

## INTRODUCTION

FDA's brief represents a sharp departure from the message it provided to the public, consumers, and the food and beverage industry in 2020.  After an extensive public comment process, and a detailed scientific review of the evidence concerning allulose, FDA explained how allulose should be treated on food labels.  A11–A19.  FDA expressly told the food industry that given advances in food technology, and to assist consumers in maintaining healthy diets, the agency had moved away from an exclusively chemical-structure approach to sugar labeling.  A16.  FDA explained that an ingredient's caloric contribution, glycemic and insulinemic effects, and contribution to dental caries would determine whether the ingredient is included in the calculation of Total Sugars.  A16–A18.  And FDA specifically determined that allulose could be excluded because allulose had none of those relevant health effects and was fundamentally different from the specific sugars listed in the regulation.  A18.

The food and beverage industry took FDA at its word.  Chobani developed its Zero Sugar yogurt products in reliance on FDA's Allulose

1

Guidance. In doing so, Chobani devoted substantial time and resources to research, test, formulate, produce, and market the Zero Sugar products sweetened with allulose. *See* SA13. Chobani devoted more than two years to product development, which involved inventing and securing a patent for an entirely new product formulation and manufacturing process that utilized ultrafiltered milk and non-nutritive sweeteners to make yogurt. *See id.*; *see also* A38–A40.

Chobani also worked closely with FDA's Office of Nutrition and Food Labeling to obtain a temporary marketing permit that Chobani has used to sell the Zero Sugar products. SA13–14. The TMP process specifically required Chobani to submit a proposed label for FDA approval before the products could be marketed or sold. *Id.*; *see also* 21 C.F.R. § 130.17(c)(9). FDA granted the TMP after reviewing Chobani's submission, including its treatment of allulose, and the proposed "Zero Sugar" nutrient content claim on the label, including by requiring revisions to the Zero Sugar label before approving it. SA13–14.

FDA's brief says nothing about this history.  Nor does it grapple with the reality that FDA's guidance reasonably led Chobani and other regulated parties to understand that allulose did not need to be treated as a sugar on the Nutrition Facts Panel or for nutrient content claims about sugar, which expressly incorporates the Total Sugars definition.  *See* 21 C.F.R. § 101.60(c)(1)(i).  Indeed, FDA stated in the Allulose Guidance that exempting allulose from the Total Sugars definition would better align with its statutory mandate to convey *accurate* dietary information to consumers.  A16–A18.

FDA's principal argument is that the Total Sugars definition, 21 C.F.R. § 101.9(c)(6)(ii), unambiguously includes allulose because allulose is chemically a monosaccharide.  FDA asserts that the text, structure, and history of the Total Sugars definition compel the inclusion of allulose because it covers "all" monosaccharides.  Chobani's Response Brief demonstrates why none of these arguments has merit.  Chobani Resp. Br. at 18–28.  On the text, FDA's interpretation would have the Court ignore the specific listed examples ("such as glucose, fructose, lactose, and sucrose") and affirmatively read redundancy into the regulation.  But courts do not

lightly assume that express contextual examples serve no purpose. FDA's remaining arguments also fail because they ignore the many surrounding regulatory provisions (and FDA's own prior statements) that have treated sugars as having dietary consequences. Indeed, FDA asks the Court to give interpretive weight to decades-old informal comments while at the same time giving no weight to the Allulose Guidance which contains specific analysis of how allulose should be treated under the Total Sugars regulation. Because the better interpretation of the Total Sugars definition—which is the purview of this Court, not FDA—is that allulose is not a sugar, Plaintiffs' claims are preempted under the NLEA.

Moreover, regardless of how the Court resolves the preemption question, FDA's brief says nothing about Chobani's independent and dispositive argument that Plaintiffs have not plausibly alleged that any reasonable consumer was deceived by a Zero Sugar label on a product that has none of the dietary impact of traditional sugars.

That independent ground is plainly sufficient to affirm the decision below and provides the Court with an opportunity to avoid resolving the

harder interpretive question. Chobani Resp. Br. at 46–53. Plaintiffs' theory of deception is artificial and manufactured. Plaintiffs do not allege that the Zero Sugar products contain caloric sugar, raise blood sugar, affect insulin response, promote tooth decay, or produce even a single dietary impact that consumers associate with sugar. Instead, Plaintiffs ask this Court to assume that a significant portion of reasonable consumers understand "zero sugar" as a technical claim about the number of monosaccharides in a product. That is an idiosyncratic view of how a reasonable consumer reads food labels, as FDA's Allulose Guidance and Plaintiffs' own Complaint demonstrate. *See* A16 ("[T]o assist consumers in maintaining healthy dietary practices, we should consider not only the chemical structure of sugars, but also other evidence, including their association with dental caries and how they are metabolized in the body."); *see also* A39 (Plaintiffs' allegation that the reasons consumers avoid sugar are to avoid gaining weight and to improve their diet).

The Court may therefore affirm for two independent reasons. First, notwithstanding FDA's new textual arguments, the better interpretation of

the regulation is that allulose is not included within the calculation of Total

Sugars.  Second, this Court does not need to reach the interpretive question

at all because Plaintiffs' theory of consumer deception fails as a matter of

law.

## ARGUMENT

## I.  FDA'S VIEW OF THE ALLULOSE GUIDANCE IS FLAWED AND DOES NOT DEFEAT PREEMPTION.

Each of FDA's textual arguments is mistaken.  Allulose is not included

in the Total Sugars definition because allulose is fundamentally different

from the traditional sugars that are expressly listed in the regulation.[1]  FDA's

contrary arguments are incorrect and should be rejected.

As an initial matter, the Total Sugars regulation defines "Total Sugars"

as "the sum of all free mono- and disaccharides (such as glucose, fructose,

lactose, and sucrose)."　21 C.F.R. § 101.9(c)(6)(ii).　FDA contends that the

---

[1] Because allulose is not included in the Total Sugars definition, Chobani's "zero sugar" nutrient content claim is expressly authorized by the plain terms of 21 C.F.R. § 101.60(c)(1)(i).  That provision authorizes the "[u]se of terms such as . . . 'zero sugar'" on food labels so long as the product contains "less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii)."  *See also* Chobani Resp. Br. at 41–44.

6

plain meaning of the definition "includes *every* free monosaccharide." FDA Br. at 12. But the core defect in FDA's interpretation is that it improperly reads the listed examples entirely out of the regulation. The relevant question is not whether "all" means "all." The question is all of *what*. Here, the category is defined not only with the phrase "all free mono- and disaccharides," but also with the contextual phrase "such as glucose, fructose, lactose, and sucrose."

Importantly, FDA's brief fails to substantively engage with the *noscitur a sociis* canon, which is particularly applicable to the Total Sugars definition. As the Supreme Court has explained, the *noscitur a sociis* canon "teaches that a word is given more precise content by the neighboring words with which it is associated," and that "a general phrase can be given a more focused meaning by the terms linked to it." *Fischer v. United States*, 603 U.S. 480, 487–88 (2024) (internal quotation marks and citation omitted). While FDA sidesteps the canon in a footnote, FDA argues that "Chobani does not dispute that allulose is a 'monosaccharide' or suggest that the term has any ordinary meaning apart from its technical one." *See* FDA Br. at 18 n.3. But

7

FDA misunderstands Chobani's argument: while allulose is technically a monosaccharide, the listed examples give obvious meaning to that term for purposes of nutrition labeling and make clear that allulose is not the type of monosaccharide covered by the regulation. *See, e.g.*, *McBoyle v. United States*, 283 U.S. 25, 26–27 (1931) (although an airplane is literally a vehicle powered by a motor, it was not a "motor vehicle"); *see also* Chobani Resp. Br. at 20–25.

To be sure, the *noscitur a sociis* canon is not a license to rewrite the text. But the canon applies when the surrounding words identify a coherent class of ingredients and ignoring those words would sweep in an ingredient that is fundamentally different and wholly inconsistent with the Congressional mandate that nutrition labeling help consumers make healthier dietary choices. *See* 21 U.S.C. § 343(q)(2); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (declining to read a definition's specific examples to have "no purpose"); *Yates v. United* States, 574 U.S. 528, 543–44 (2015) (plurality opinion) (relying on other listed examples in a statute to hold that a fish is not a tangible object); Chobani Resp. Br. at 20–25.

8

FDA offers two analogies, but both miss the mark.  FDA argues that no one would read the phrase "all states that border the Mississippi River (such as Wisconsin, Illinois, and Kentucky)" to include only states on the eastern bank, or "all member clubs of the National Football League (such as the Detroit Lions, the Minnesota Vikings, and the Buffalo Bills)" to include only teams that have never won a Super Bowl.  FDA Br. at 18–19.  But these examples miss the point: these "such as" examples rely on an arbitrary characteristic that does not make the listed examples fundamentally distinct from other members of the class.

The Total Sugars definition is vastly different.  It is clear what glucose, fructose, lactose, and sucrose have in common: they are dietary sugars that add calories, raise blood sugar, and cause cavities.  FDA Br. at 2–3, 8; A16–A18.  Unlike FDA's context-free hypotheticals, Chobani did not pull these characteristics from thin air.  Indeed, FDA itself specifically identified each characteristic as a dietarily relevant consideration that consumers associate with sugar.  A16–A18.  Given FDA's statutory mandate to regulate in a manner that "assist[s] consumers in maintaining healthy dietary practices,"

9

21 U.S.C. § 343(q)(2), it is clear that allulose should not be included with the fundamentally different sugars that are listed in the regulation. Indeed, FDA's interpretation of the Total Sugars regulation as applied to allulose would squarely conflict with the NLEA itself, as the NLEA requires that FDA's labeling regulations serve the purpose of assisting consumers in maintaining healthy diets through accurate and truthful information. *See* 21 U.S.C. § 343(q)(2).

Additionally, as FDA acknowledges, its new view of the regulation would create textual surplusage. In FDA's view, the Total Sugars definition should be interpreted to contain "technically unnecessary examples" that create redundancy in the regulation. *See* FDA Br. at 16–17. But courts should not lightly assume that express contextual examples serve "no purpose." *Gustafson*, 513 U.S. at 575. Indeed, courts frequently construe the phrase "such as" to convey substantive meaning. *See Easom v. US Well Servs., Inc.*, 37 F.4th 238, 243 (5th Cir. 2022); *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 994 (9th Cir. 2024). And if "such as" examples do no interpretive work, multiple portions of other FDA regulations would lose meaning. That is

especially problematic here because § 101.9 repeatedly uses examples to help regulated parties understand the scope of technical nutrition-labeling categories. The better interpretation of the Total Sugars definition is more modest: the listed examples are not exhaustive, but they convey substantive meaning about the relevant monosaccharides that are included in the definition.

Beyond its textual arguments, FDA also contends that the regulatory structure confirms its interpretation based on a lone provision exempting tagatose from a tooth-decay regulation. FDA Br. at 13–15 (citing 21 C.F.R. § 101.80(c)(2)(i)(H)). FDA argues that the tagatose exemption would be unnecessary if the Total Sugars definition already excluded monosaccharides with different physiological effects. But FDA has no answer to the surrounding provisions that expressly treat "sugars" as having dietary consequences, including the four-calorie-per-gram of sugar rule, 21 C.F.R. § 101.9(c)(1)(i)(B), and other relevant tooth-decay provisions, *see id.* § 101.80(a)(2) ("The more frequent and longer the exposure of teeth to dietary sugars . . . the greater the risk for tooth decay"). *See also* Chobani Resp. Br.

at 25–28.  Moreover, FDA's reliance on a tagatose exception is not helpful because FDA itself has explained that allulose and tagatose are different metabolically and should not be treated identically for purposes of nutrition labeling.  A25–A31.

Finally, FDA relies on the regulatory history.  FDA Br. at 14–15.  FDA relies principally on selected statements from the 1993 and 2016 rulemakings.  But those *informal* statements are not the operative regulatory text, much less the statutory text.  And while regulatory comments can sometimes illuminate meaning, they cannot override the words that were actually adopted in the regulation.  *See Peabody Twentymile Mining, LLC v. Sec'y of Lab.*, 931 F.3d 992, 998 (10th Cir. 2019) ("[W]hile the preamble can inform the interpretation of the regulation, it is not binding and cannot be read to conflict with the language of the regulation itself.").  Moreover, it is puzzling that FDA asks the Court to give interpretive weight to FDA's informal comments while at the same time it completely disregards the Allulose Guidance, which contains specific analysis of how allulose should be treated under the Total Sugars regulation.

In sum, none of FDA's arguments establishes that allulose is included in the Total Sugars definition. Chobani's interpretation gives accurate meaning to each word in the regulation, while FDA and Plaintiffs delete several meaningful words from the regulation and offer an interpretation of the regulation that is at odds with the rest of the regulatory structure, including the four-calorie per gram of sugar rule, and with FDA's mandate to issue rules that help consumers make healthier dietary choices. *See* 21 C.F.R. § 101.9(c)(1)(i)(B); 21 U.S.C. § 343(q)(2). Because the best reading of the Total Sugars definition is that allulose is not included, Plaintiffs' claims are preempted under the NLEA.

## II. CHOBANI'S REASONABLE CONSUMER ARGUMENT IS DISPOSITIVE.

Importantly, FDA's brief does not address Chobani's independent and dispositive argument that Plaintiffs cannot plead a viable claim of consumer deception. This Court may affirm the judgment below on any basis supported by the record. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). Chobani's reasonable consumer argument independently supports affirmance.

13

Pleading deception under the reasonable consumer standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025) (internal quotation marks and citation omitted); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939–40 (7th Cir. 2001) (affirming Rule 12(b)(6) dismissal of consumer deception claims). Thus, the question at Rule 12(b)(6) is whether a complaint plausibly alleges that a significant portion of consumers, acting reasonably, would be deceived by the challenged labeling. That standard is not satisfied where the alleged deception depends on an unreasonable, technical, or artificial reading of the challenged label.

FDA's brief *acknowledges* that allulose is metabolized differently than traditional sugars, has different physiological effects, provides only minimal calories, does not meaningfully raise blood sugar or insulin levels, and does not promote tooth decay. *See* FDA Br. at 3, 8. FDA's brief reaffirms the Allulose Guidance's key scientific determinations about allulose. And FDA's brief nowhere takes issue with the Allulose Guidance's statements

14

that excluding allulose from sugar labeling would better ensure that food labels convey more accurate nutrition information to consumers.

Plaintiffs' theory of deception is that consumers interpret any reference to "sugar" on a product label to refer exclusively to the presence of a chemical mono- or disaccharide. But the Complaint's theory of deception is negated by specific allegations in the Complaint itself. Indeed, apart from conclusory statements and formulaic recitations of "deception," the Complaint pleads no "factual content" about why consumers are deceived by the Zero Sugar labels. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The only relevant allegation is that consumers have "a strong desire" for zero-sugar products given "recent healthy eating trends." A39 ¶ 27 & n.4 (citing a survey that states that "the top reasons for limiting or avoiding sugars include to avoid gaining weight and to improve their diet in general"). Thus, on Plaintiffs' own expressly alleged theory, consumers seek zero-sugar products to avoid the dietary effects associated with traditional sugars—not to avoid "monosaccharides." Chobani's Zero Sugar product is not misleading to consumers because the yogurt has none of the dietary

15

effects of traditional sugars.  *See Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996) ("[I]f a plaintiff chooses to plead particulars, and they show he has no claim, then . . . he has pleaded himself out of court.") (internal quotation marks and citation omitted).  The Complaint does not allege how the named plaintiffs are deceived, much less how "a significant portion of the general consuming public" would be misled by consuming Chobani Zero Sugar yogurt if they want to avoid the weight gain or other health effects associated with traditional sugars.

Plaintiffs' theory of consumer deception relies on a chemistry-first interpretation of Chobani's label and contains no facts at all about why a significant portion of the public would plausibly be misled.  FDA's brief does not address that independent pleading defect.  These pleading defects provide a straightforward basis for this Court to affirm the decision below without reaching the preemption question.

If the Court prefers not to reach this issue, the issue should be remanded to the District Court in the first instance.  Chobani also intends to raise additional Rule 12(b)(6) arguments—including that FDA's approval of

Chobani's Zero Sugar TMP has preemptive effect following the Supreme Court's decision in *Monsanto Co. v. Durnell*, 609 U.S. ____ (June 25, 2026), 2026 WL 1825691, and that the Total Sugars regulation conflicts with the NLEA's statutory mandate to assist consumers in maintaining healthy dietary practices.

But it should not come to that.  Chobani has been transparent with FDA and with consumers, while the Complaint nowhere alleges factual content to explain why reasonable consumers are actually deceived. Chobani's Zero Sugar product is an innovation that benefits public health. It is not a product that should face sweeping class action liability based on a tendentious theory of deception that finds no support in Plaintiffs' own complaint, FDA's brief, or the Allulose Guidance.

## CONCLUSION

FDA's brief adopts an incorrect and hyperliteral reading of the Total Sugars regulation that departs from FDA's prior position on allulose and gives no effect to the regulation's listed examples.  This Court may also affirm on the alternative ground that Plaintiffs have failed to plead a

plausible theory of consumer deception. Chobani respectfully requests that this Court affirm the decision below.

Dated: July 20, 2026

Respectfully Submitted,

/s/ *Andrew S. Tulumello*

Andrew S. Tulumello
Arianna Scavetti
Sebastian Laguna
WEIL GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
drew.tulumello@weil.com
arianna.scavetti@weil.com
sebastian.laguna@weil.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I hereby certify that this brief conforms to the rules contained in F.R.A.P. 27(d)(2)(A), 32(a)(6), and Circuit Rule 32(b). It is prepared in proportionally spaced 14-point Palatino Linotype font. The length of the brief is **3,131** words.

Dated:  July 20, 2026

/s/ *Andrew S. Tulumello*

Andrew S. Tulumello

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, the foregoing Response Brief was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated:  July 20, 2026

/s/ *Andrew S. Tulumello*

Andrew S. Tulumello